# EXHIBIT G

# REVOCATION HEARING SUMMARY

| | |
|---|---|
| Name . . . . . . . . . . . : TAYLOR, Jessie | Supervision . . . . . : Mandatory Release |
| Reg . . . . . . . . . . . . : 78939-011 | Months in Custody : 25 |
| Examiner . . . . . . . : Harry Dwyer, Jr. | Custody Type . . . : Both federal and state |
| Warrant Executed : 12/26/01 | |
| Preliminary Interview: 3/14/02 | Projected MR Date : 1/19/07 |
| Institution . . . . . . : Dublin FCI | Full Term Date . . : 8/5/09 |
| 2nd Designation . : | Hearing Date . . . . : 12/13/02 |
| Revoking District : Northern District of California (Oakland) | |
| Hearing Type . . . . : Local | |

## I. Counsel And Witnesses:

Robin Packel
Assistant Federal Public Defender, N/CA
1301 Clay Street, Room 200-C
Oakland, CA 94612
Telephone No. (510) 637-3500

**Witnesses Name & Any Explanatory Text Concerning Counsel and/or Witnesses:**

Oakland Police Officer, Shawn Whent.

Subpoenaed witness did not appear, Geraldine Miller - subpoena returned undelivered.

Deputy Sheriff W. Wissmeller of the Alameda County Sheriff's Officer was to be subpoenaed, however, it was ascertained that Deputy Wise Wissmeller was no longer employed by the Alameda County Sheriff's Office.

USPO Mark Messner was present and testified at the hearing.



## II. Procedural Considerations:

Counsel objected to the hearing based upon the warrant having not been executed when subject was released from state custody in August 1999, that subject was not given credit for the period that he was in state custody from 10/3/01 to 12/26/01 and that there was considerable delay in

TAYLOR.789    Typist: PAH    Date Typed: January 7, 2003                Page 1 of 7

conducting a Revocation Hearing which caused witnesses Geraldine Miller and Sara Lewis being unable to be located.

Counsel also believes that the time subject spent in state custody on two separate occasions as a state parole violator should be counted towards the guidelines.

It is noted that the Commission issued the warrant timely and did not learn until much later that subject had been convicted of a new charge and received a new state sentence. Despite the warrant not being executed when subject was released from state custody in August of 1999, it was not through the fault of the USPC that the warrant was not executed thus this examiner does not believe that the subject has been prejudiced by the warrant not being executed back in 1999. Further, the Commission has made a good faith effort in attempting to have Geraldine Miller present at the hearing and to be cross examined by the USPC and subject's counsel, however, the subpoena was returned undeliverable. It is noted that counsel did in fact present evidence that it was extremely difficult to have Geraldine Miller appear at the Preliminary Hearing of subject.

### III. Review of Charges:

Charge No. 1 - Failure to Report Change in Employment.

On or about 6/26/98, the subject terminated his employment at Tandom Industries and on 7/28/98 USPO Messner learned from a representative of Tandom Industry that subject had left his employment on 6/26/98. The subject failed to notify his USPO of his change employment according to USPO Messner's violation report of 8/21/98.

Charge No. 2 - Failure to Submit Supervision Reports.

The subject failed to submit his required monthly supervision report to his USPO for the month of July 1998 according to USPO Messner's violation report of 8/21/98.

Charge No. 3 - Failure to Report Change in Residence.

On or about 8/4/98, USPO Messner learned that subject had moved from his last reported residence of 8701 Hillside Avenue No. 217, Oakland, CA 95608 on or before 8/4/98. USPO Messner made an on sight visit to the address on 8/4/98 and observed an eviction notice posted that stated that the residence had been restored to the judgement credited as of 8/4/98. The subject failed to advise his USPO of his current address and his whereabouts are unknown according to USPO Messner's violation report of 8/21/98.

Charge No. 4 - Law Violation: (A) Attempted Robbery, (B) Attempted Grand Theft.

On 9/10/98, the subject attempted to rob the victim Geraldine Miller by demanding money by threatening her with a hammer and subject threatened to kill her if she did not give him her money. The subject was arrested by Oakland Police Department for Charge 4 (A) on the same date according to police report dated 9/10/98. On 1/20/99 the subject was convicted in Alameda County, California Superior Court for the amended Charge of 4 (B) above and was sentenced to 18 months according to Judgement dated 1/20/99. Status of custody/criminal proceeding, the subject was convicted of attempted grand theft and was in state custody from 9/10/98 to 8/11/99.

TAYLOR.789    Typist: PAH    Date Typed: January 7, 2003    Page 2 of 7

The subject initially denied all of the charges except for failure to report change in residence. During the course of the hearing the subject actually admitted all three administrative violations, however, he denied the law violations but admitted having been convicted of attempted grand theft. In terms of employment subject was working as a warehouse man through a temporary agency and subject wanted to have another job before he told his USPO that he had quit his job. The subject can not remember if he submitted a supervision report but during the course of the hearing the subject states that he cannot recall whether or not he submitted supervision report therefore he believes that he did not. In reference to the change of residence violation, subject states that he was forced to move from his address, had no residence and was homeless. In reference to Charge No. 4, the subject denies the charge but admits that he pled guilty to attempted grand theft. The subject states that he knew the victim because he had lent her money and when he saw her buy crack, he told her he wanted his money. He demanded his money in an aggressive manner and the victim told him that she was going into the apartment to get his money but instead called the police. The subject denies having a hammer when he ran into the apartment indicated in the police report but admits that he hid in a closet from the police. The subject states that the occupant of the apartment was the owner of the hammer and owed the alleged victim money. The subject admits breaking free from the police running into another apartment, jumping out of a second story window of the second apartment and while trying to escape was finally apprehended. The subject states that he entered a plea of guilty in order to avoid a three strike conviction and the guilty plea of grand theft was for the money.

The first witness to testify was Officer Shawn Whent of the Oakland Police Department. Officer Whent has been with the Oakland Police Department for 7 years as of the present and did not bring a police report with him to the hearing and was given a copy of the police report to be reviewed and was given an opportunity to review the report before any questions were put to him. Officer Whent stated that he and another officer responded to a call that a victim had been robbed and the victim directed the police to an apartment which subject had ran into. They went to the apartment, found subject in a back bedroom, attempted to arrest him but he broke free and they chased him. Officer Whent took the victim's statements and wrote out the statement and the victim signed the statement. The other officer took the statement of the other witness and he does not fully recall taking the statement and only spoke with the victim only briefly and the victim and others pointed out the first apartment subject ran into him. The time to gain custody of subject following arrival to arrest was approximately 15 to 20 minutes and subject did not attempt to assault any of the officers but was merely trying to flee when he spun away and fled. The subject threatened the victim but the other persons who were in the complex were apparently afraid of him. There is no doubt in the officer's opinion regarding the credibility of the statement that the victim gave him. The officer never saw subject with a hammer and did not run any prints on the hammer and it was an average size hammer. He could not recall the size of the victim, the victim was not intoxicated and gave the statement freely. The occupant of the apartment the subject ran into voluntarily pointed out the location of the hammer under the sofa when the officer went back to her apartment. The subject initially gave a false name and it was not until the Social Security No. was run that the subject's true name was ascertained.

The second witness was USPO Mark Messner. USPO Messner began supervising subject upon his release and supervised him for about 6 months before subject went to state custody. He requested the warrant because of technical violations and once he could not locate subject at his listed address, he waited for subject to surface and then he requested the warrant. There was no contact since July 1998 and was subject was first released he did fairly well and the USPO assisted subject

TAYLOR.789    Typist: PAH    Date Typed: January 7, 2003    Page 3 of 7

by referring him to a job fair, subject had no positive for drugs and after early August 1998 he had no choice other than to request a warrant. He did not learn of subject's arrest until much later and the USPO obtained and presented information regarding subject's time in state custody as the examiner requested. The California Department of Corrections requested that subject serve two periods of time, one for 12 months for the original sentence for attempted grand theft and the second 12 months was for a parole violation. The USPO was unaware of the second state parole violation period in custody. He did learn of subject being in state custody, however, he can not recall when he learned of subject being in state custody. The USPO also requested and obtained information from Alameda County Superior Court regarding subject's conviction for attempted grand theft.

Counsel presented a transcript of the Preliminary Hearing on the grand theft conviction, information from the CDC regarding time subject spent in custody, a statement from the staff investigator from the Public Defender's Officer regarding an attempt to contact Sara Lewis. Counsel pointed out several areas of testimony by the occupant of the apartment that the hammer was found in and that occupant on page 46 indicated the officer came back and asked about the hammer. The testimony indicates that the witness stated that the hammer did not belong her and did belong to subject. Also, at pages on 15, 21 and 23 there is no indication from anyone seeing a 12 inch claw hammer and Geraldine was drinking at the time but was not using crack. At the time of the testimony at the Preliminary Hearing she had been out of rehab only a short period of time when she testified. No one saw subject threaten the victim, the victim, that was prejudice and the delay of the conducting of the Revocation Hearing when subject was originally released from state custody in 1999, the occupant of the apartment where the hammer was located testified that she was threatened by the officer if the hammer was not located. The counsel notes there was a 4 year delay in conducting the Revocation Hearing and this has caused the subject considerable problems in preparing a defense. Counsel believes that subject should be given credit towards the guidelines for time he spent in state custody based upon the regulations regarding credit for any time spent in confinement. Regarding Rizzo v. Armstrong counsel believes that subject should not have his street time forfeited because of the delay in the execution of the warrant which should have been executed at the time subject was originally released from state custody in 1999 and there was prejudice caused by the delay in order to have the alleged victim and Sara Lewis not being available to testify. Counsel does not believe it is fair to take all of subject's street time.

It is noted that subject admitted Charges 1, 2 and 3 which were administrative violations during the course of the hearing and USPO Messner testified as to those violations and this examiner finds there is sufficient evidence by the preponderance standard to make a finding on the charges. In reference to Charge No. 4, the criminal charge this examiner notes that subject did in fact enter a plea of guilty to attempted grand theft, however, this examiner believes there is sufficient evidence to make a finding that the behavior also involved attempted robbery. This is based upon the testimony and the written report of Oakland Police Officer Whent. Further, the transcript of the preliminary hearing the alleged victim testified that subject did in fact attempt to rob her and this examiner finds that the testimony of the police officer at the Revocation Hearing and the testimony of the alleged victim at the preliminary hearing to be credible. Further, this examiner believes that the statement given to the police officer at the time of the offense is more credible than subject's denial and explanation of the incident. Therefore, this examiner believes there should be finding on Charge No. 4, both the attempted robbery and attempted grand theft and this finding was made by the use of the preponderance of evidence standard.

## IV. Findings of Fact And Basis:

The Examiner finds that subject has committed the following violation(s): Charge No. 1 - Failure to Report Change in Employment.

Basis: Although you initially denied the charge, you did admitted during the course of the Revocation Hearing and USPO Messner's violation report of 8/21/98 and testimony at the Revocation Hearing.

Charge No. 2 - Failure to Submit Supervision Reports.

Basis: Although you initially denied this charge, you later admitted during the course of the hearing and USPO Messner's violation report of 8/21/98 and testimony at the Revocation Hearing.

Charge No. 3 - Failure to Report Change in Residence.

Basis: Your admission at the Revocation Hearing and USPO Messner's violation report of 8/21/98 and testimony at the Revocation Hearing.

Charge No. 4 - (A) Attempted Robbery, (B) Attempted Grand Theft.

Basis: Police report dated 9/10/98, Oakland Police Officer Whent testimony at the Revocation Hearing, your conviction in Alameda County Superior Court on 1/20/99 for attempted grand theft and testimony of Geraldine Miller at the preliminary hearing.

**No Findings And Supporting Rational:**

None.

## V. Previous Commission Action:

Please see Pre-review dated 11/13/02. The subject originally received a 20 year term for bank robbery (at least 5 bank robberies) and subject was continued to expiration being mandatorily released on 2/27/98. Less than 6 months after subject was released a warrant was issued based upon administrative violations and it was later learned that subject had sustained conviction and a 18 month sentence to the California Department of Corrections for an attempted grand theft offense.

## VI. Community Resources And Issues:

The subject plans to release to San Leandro, CA and subject states he has skills in construction and landscaping. No special conditions appear to be warranted.

## VII. Salient Factor Score:

    0  - A. Prior Convictions/Adjudications (Adult or Juvenile)
    0  - B. Prior Commitment(s) of More than 30 Days (Adult/ Juvenile)
    1  - C. Age at Current Offense/Prior Commitments

TAYLOR.789    Typist: PAH    Date Typed: January 7, 2003                                    Page 5 of 7

```
        (5 or more commitments)
0   - D. Recent Commitment Free Period (Three Years)
0   - E. Probation/Parole/Confinement/Escape Status Violator
0   - F. Older Offenders
1   - Total Salient Factor Score
```

## VIII. Evaluation:

The subject was mandatory released on a 20 year sentence for bank robbery and about 5 months after being released subject began to violate the conditions of his release. Subject quit his employment, failed to submit his supervision reports and changed his residence without notifying the USPO, USPO waited a period of time before requesting a warrant hoping that subject would surface, however, it reached the point that the USPO had no choice other than to request a warrant. It was not until much later that the USPO had learned that subject had been arrested on 9/10/98 for attempted robbery and attempted grand theft and subject pled guilty to attempted grand theft and received an 18 month state sentence. The subject was returned on two separate occasions as a state parole violator serving 12 months on the first violation and almost 4 months on the second violation. The subject was apparently released from state custody on the second violation on 9/30/01, however, subject was returned to custody on 10/3/01 according to available information because subject should have been released to the detainer filed by the USPC through the US Marshal. It would appear that subject should receive credit for the time spent in state custody from 10/3/01 to the execution of the warrant on 12/26/01 toward satisfaction of the maximum term. Subject was apparently taken by the state parole agent to the California Department of Corrections solely for the purpose of being made available for the US Marshal to pick subject up, however, it took almost 3 months before the warrant was actually executed. This examiner believes that subject be given credit for time in custody from 9/10/98 to 8/11/99 and from 10/3/01 to present towards satisfaction of the guidelines. The subject denies attempting to rob the victim, however, it is this examiner's opinion based upon the police report and the testimony of the police officer at the Revocation Hearing plus the testimony reviewed in the transcript of the preliminary hearing there is sufficient evidence to make a finding on that charge and the charge is sufficient to warrant revocation of subject's mandatory release. This examiner did consider Rizzo v. Armstrong in terms of the 9th Circuit Court of Appeals decision regarding the credit of street time and this examiner notes that subject received a conviction for a new serious offense plus subject was not in the very good risk category when he was last released from custody. Therefore, this examiner does not believe that subject should receive any credit for time spent on mandatory release. Further, this examiner is recommending that subject be sanctioned within the guideline range and this examiner believes that the service of 60 months in state and federal custody which is the bottom of the guideline range is sufficient to satisfy the accountability factor in this case.

## IX. Recommendation:

Revoke Mandatory Release. None of the time spent on Mandatory Release shall be credited. Continue to a presumptive parole after the service of  months on .

## X. Reasons:

Your Mandatory Release violation behavior has been rated as Category Five severity because it

TAYLOR.789   Typist: PAH   Date Typed: January 7, 2003                      Page 6 of 7

involved both criminal and administrative violations, specifically: Category 5 severity, it involved Attempted Robbery. Your new salient factor score is 1. As of your hearing date of 12/13/02, you have been in Both federal and state custody for 25 months. Guidelines established by the Commission indicate a customary range of 60-72 months to be served before release. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.

As required by law you have been scheduled for a statutory interim hearing during December, 2004.

Presumptive parole date 11/2/2005.

TAYLOR.789    Typist: PAH    Date Typed: January 7, 2003                Page 7 of 7